IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

J. DAVID PASILLAS,

      **Plaintiff,**

v.                                  No. CIV 98-1391 JC/LCS

**LARRY G. MASSANARI,**[1]
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 14), filed July 31, 2000. The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the Motion, memoranda, administrative record, and applicable law, finds that the motion is well-taken in part and recommends that it be **GRANTED.**

### PROPOSED FINDINGS

1.      Plaintiff, now forty-seven years old, filed his applications for disability insurance benefits and supplemental security income on October 10, 1995, alleging disability commencing June

---

[1] Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. PRO. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

26, 1989, due to chronic headaches, back, neck and shoulder pain secondary to a motor vehicle accident and kidney problems. (R. at 12; 56-58; 61-68.) At the time he filed for benefits, Plaintiff was forty-one years old. (R. at 56.) He was born and finished secondary school in Mexico, and completed two years of college level courses taught in Spanish in the United States. (R. at 23-24.) His past relevant work was as a musician. (R. at 24.)

  2. Plaintiff's application was denied at the initial level on November 28, 1995 (R. at 68-69), and at the reconsideration level on March 29, 1996. (R. at 80-81.) Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on May 24, 1996. (R. at 88-89.) The ALJ held a hearing on April 8, 1997, at which Plaintiff appeared and was represented by a non-attorney. (R. at 18.) The ALJ received the testimony of Plaintiff and Kevin Davis, a vocational expert. (R. at 19.) Plaintiff testified through a Spanish interpreter. (R. at 20.)

  3. The ALJ issued his decision on May 30, 1997, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). (R. at 12-15.) At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. at 12.) At the second step, the ALJ determined that Plaintiff had severe impairments consisting of low chronic back, neck, shoulder, hand and leg pain, but that his complaints of headaches and kidney problems were non-severe. (R. at 13.) At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. (*Id.*) The ALJ then found that Plaintiff had the residual functional capacity for light work that allowed him to alternate sitting, standing and walking throughout the day and that his residual functional capacity

was not limited by non-exertional factors. (R. at 14.) At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a musician. (*Id*.) At step five, relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

    4.    On July 18, 1997, Plaintiff filed a request for review of the ALJ's decision. (R. at 8.) On September 11, 1998, the Appeals Council denied the request for review. (R. at 4-5.) Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Plaintiff filed this action on November 10, 1998, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

    5.    On May 15, 1999, the Court granted Defendant's unopposed Motion to Remand the case pursuant to sentence six to allow Defendant to continue to search for the claim file, and if unable to locate the claim file by September 1, 1999, to proceed to reconstruct the record or provide the Plaintiff with the opportunity for a new hearing and issue a new decision. On January 4, 2000, Plaintiff filed a Motion to Remand pursuant to sentence four, asserting that Defendant had made no demonstrable effort to comply with the Court's Order of May 13, 1999. On January 10, 2000, Defendant filed a response in opposition, stating that the hearing tapes had been located and transcribed on or about January 3, 2000, and that the answer and complete administrative record would be filed by February 1, 2000.

    6.    Defendant filed the Answer and administrative record on February 1, 2000. Plaintiff field a Reply to Defendant's response to his Motion to Remand on February 2, 2000, reiterating that the case should be remanded pursuant to sentence four. On February 10, 2000, the Honorable Lorenzo F. Garcia, United States Magistrate Judge, denied the Motion to Remand and ordered that

the case be reopened. On the same day, an Order Setting briefing schedule was issued. Plaintiff's Motion to Reverse or Remand, the Response thereto, and Reply were timely filed. This action was referred to the undersigned United States Magistrate Judge on May 1, 2001.

**Standard of Review**

7. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

8. In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson v. Sullivan*, 987 F.2d at 1487.

9. At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *See id.*

**Administrative Record**

10. On June 17, 1989, Plaintiff was treated at the University of New Mexico Hospital in Albuquerque for a gunshot wound to his right upper thigh, sustained outside the Action #1 Lounge. (R. at 114-16.)  All sensory and motor groups were intact, and there were no fractures or misalignments. (R. at 115-17.)

11. On June 26, 1989, Plaintiff was in a motor vehicle accident. (R. at 119.) Plaintiff's was driving near Encino, New Mexico when his rear axle broke and his van flipped three times. (R. at 119; 124; 133.) Plaintiff was airlifted to University of New Mexico Hospital where he underwent treatment. (R. at 110.) X-rays revealed no broken bones or thoracic abnormalities. (R. at 113.) Plaintiff's head injury was described as a "small bump." (R. at 111.) He had abrasions a contusions on his right shoulder. (*Id.*)

12. Four months later, Plaintiff was still complaining of pain in the right side of his head, and a burning sensation in his right occiput, as well as pain in his right arm, shoulder and chest wall. (*Id.*)  Dr. John W. Huchinson, M.D diagnosed right occipital neuralgia, post traumatic. (R. at 120.) Dr. Hutchinson noted that Plaintiff had difficulty communicating and that English was his second language. (R. at 119.)

13. On December 5, 1989, Dr. Dennis D. Knoche, D.C., wrote that he treated Plaintiff for head and neck injuries sustained in the June 26, 1989 accident. (R. at 124.) Dr. Knoche diagnosed cervicobrachial syndrome and brachial neuralgia. (*Id.*) Plaintiff complained of daily headaches and constant pain in the middle and lower back radiating off to the right side. (R. at 125-26.) On November 4, 1989, Plaintiff was in another automobile accident, when he was rear-ended at a stoplight. (R. at 131.) Dr. Knoche examined Plaintiff's neck and upper spine, but did not find any evidence of injury from the second accident. (R. at 124.)

14. On June 1, 1993, Dr. Alvaro A. Hernandez, M.D., wrote that Plaintiff was still experiencing intermittent pain in his neck and back. (R. at 135.) An MRI revealed degenerative bulging of the L4-5 disc and a disc herniation at C5-6. (*Id.*) Plaintiff had restriction with left cervical rotation and lower back pain bilaterally on straight leg raising. (*Id.*) Dr. Hernandez rated Plaintiff at "no less than 20 percent permanent impairment of the body secondary to cervical/thoracic/lumbar sprain, as well as to a lumbar and cervical discogenic syndrome. (*Id.*)

15. On August 5, 1995, Plaintiff was diagnosed and treated for a kidney stone and possible kidney infection in the emergency room of Thomason Hospital in El Paso. (R. at 140-42.) On August 28, 1995, Dr. John Kiker, M.D. diagnosed hyperoxaluria and elevated triglyceride and cholesterol levels. (R. at 148.) Dr. Kiker referred Plaintiff to a dietician for management of his condition. (*Id.*)

16. On November 20, 1995, Dr. Leonore A. Herrera, M..D. performed a consultative physical examination. (R. at 155-57.) Plaintiff had limited shoulder elevation at 90 degrees and abduction of 90 degrees, a crepitation of the left shoulder. (R. at 156.) The examination was otherwise unremarkable. Dr. Herrera concluded that Plaintiff's ability to lift and carry were

somewhat limited, his ability to stand and walk for prolonged periods or on a incline were limited, and his ability to sit for prolonged periods was affected. (R. at 157.) Dr. Herrera noted that English was Plaintiff's second language, that he had limited ability to converse, and that he had difficulty understanding verbal commands. (*Id.*) Dr. Herrera wrote that she was unsure whether Plaintiff had a language perception problem or a hearing problem and was puzzled because Plaintiff exhibited no hearing difficulties during her routine screening hearing exam. (*Id.*) Dr. Herrera diagnosed chronic back pain without radiculopathy and occasional chest wall problems stemming from the June 26, 1989 accident. (*Id.*)

17.  On November 28, 1995, Dr. Nancy Nickerson, M.D., an agency physician, reviewed Plaintiff's records and completed a physical residual functional capacity assessment form. (R. at 60-67.) Dr. Nickerson opined that Plaintiff was able to lift up to fifty pounds occasionally and twenty-five pounds frequently, sit for six hours out of an eight-hour workday, and stand or walk for six hours out of an eight-hour workday, (R. at 61), and was limited in his ability to reach overhead. (R. at 63.)

18.  Plaintiff testified through a Spanish interpreter. (R. at 20.) Plaintiff's answers were mostly monosyllabic and often inaudible. (R. at 21-41.) Plaintiff testified that he did not seek medical treatment for his back pain, even though he was covered by his wife's insurance, because he could not afford the co-payments, he had no money and he "owed a lot." (R. at 28; 34.) Plaintiff lived with his wife, teenage daughter and two-year-old granddaughter, and spent his days alone at home. (R. at 35-36.)

19.  Plaintiff testified that he was unable to bathe or dress himself. (R. at 36.) He wore shorts during the day. (*Id.*) His wife would come home from work at noon to bathe and dress him. (*Id.*) Plaintiff was able to feed himself, but had not tried to go up or down stairs. (R. at 37-38.)

7

Plaintiff's earnings record reflect that he had earnings in only one quarter after the June 1989 accident, during the first quarter of 1990. (R. at 163.)

**Discussion**

20.     In support of his Motion to Reverse or Remand the Administrative Agency Decision, Plaintiff submits a Report of Psychological Consultative Examination, dated May 19, 1998. (Pl. Ex. A.) Dr. Guido A. Barrientos, Ph.D., examined Plaintiff on May 4 and 18, 1998, and administered several standardized tests in Spanish. (*Id.*) On the WAIS-III, Plaintiff scores were consistent with a verbal IQ of 55, a performance IQ of 53 and a full scale IQ of 50. (*Id.*) Plaintiff exhibited severe deficits across all skill areas, severe cognitive deficits and significant deficits in functioning. (*Id.*) The WMS-III, a memory test, revealed severe deficits in immediate memory and did not vary significantly from his IQ test scores, suggesting a global cognitive decline. (*Id.*) On the Trail-Making Test, designed to test psychomotor speed, visual tracking skills and divided attention abilities, Plaintiff showed severe psychomotor slowing and severe deficits in divided attention, pointing to serious cognitive deficits. (*Id.*) Dr. Barrientos assigned Plaintiff a 40 GAF score.[2]

21.     Dr. Barrientos noted that Plaintiff had suffered a head injury in a car accident in 1989 and that it was unlikely that Plaintiff's mental condition had been as poor prior to the accident. (Pl. Ex. A.) Dr. Barrientos opined that Plaintiff would have severe restrictions in daily functioning due

---

[2]A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994) at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id*. at 32. expectation of death). *See id*. at 32.

to his poor memory skills. (Pl. Ex. A.) Plaintiff's of memory deficits, headache and ringing in his ears were noted to be typical of post-concussional symptoms. Plaintiff test scores were consistent with his symptoms and pointed to serious cognitive deficits and impairment in daily functioning. (*Id.*) Dr. Barrientos opined that the prognosis for recovery was pessimistic in terms of recovery of cognitive function due to the time that had passed since the automobile accident and recommended that Plaintiff be referred to a brain injury survivors group. (*Id.*)

22. Dr. Barrientos report was issued on May 19, 1998. The ALJ issued his decision on May 30, 1997. The Appeals Council denied Plaintiff's request for review on September 11, 1998. Thus, the report was prepared after the ALJ issued his decision, but before the Appeals Council denied Plaintiff's request for review. Plaintiff submitted Dr. Barrientos' report to the Appeals Council on September 10, 1998, the day before the Appeals Council issued its decision.

23. Plaintiff urges the Court to consider Dr. Barrientos' report because it was submitted to the Appeals Council one day before it issued its decision. The Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." 20 C.F.R. § 404.970(b). Evidence presented to the Appeals Council becomes part of the administrative record reviewed by the district court to the extent that it is new, material and relevant to the pertinent time period. *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994). However, in reviewing the decision of the Commissioner, this Court may not consider materials that were not included in the administrative record. *O'Dell*, 44 F. 3d at 859.

24. Plaintiff waited almost four months to submit the report to the Appeals Council. The report was mailed one day before the Appeals Council issues its decision. The Appeals Council could

not have received the report before it issued its decision.  At that time, Plaintiff was represented by a non-attorney. (Pl. Ex. A.)  The report was not considered by the Appeals Council and was not included in the administrative record before the Court.  Under these circumstances, the Court is unable to consider the contents of Dr. Barrientos' report.  *O'Dell*, 44 F. 3d at 859.

25.     The omission of Dr. Barrientos' report is troubling, because the report indicates that Plaintiff may have sustained brain damage, a condition that could limit Plaintiff's ability to perform substantial gainful activity.  If Dr. Barrientos' findings were accepted, Plaintiff may satisfy requirements of a listed impairment. *See, e.g.* 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.02.[3]  For this reason, the Court has evaluated whether a sentence six remand would be appropriate for consideration of Dr. Barrientos' report. The Social Security Act, 42 U.S.C. § 405(g), specifies what actions the district court may take on review, and gives the district court only limited authority to remand a case to the agency. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).  The district court may remand only in "three carefully delineated circumstances." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir.1994).  Pursuant to sentence four of §405(g), the court may remand the case after passing on its merits and issuing a judgment affirming, reversing, or modifying the Secretary's decision. *See* 42 U.S.C. §405(g); *Melkonyan*, 501 U.S. at 100.  In the alternative, pursuant to sentence six of §405(g), the court may remand the case without ruling on the merits if (a) the Secretary requests remand, for good cause, prior to filing his answer; or (b) new and material evidence comes to light, and there is good cause for failing to incorporate such evidence in the earlier

---

[3] Plaintiff argues that Plaintiff would satisfy Listing 12.05 based on his IQ scores alone. However, Listing 12.05, Mental Retardation and Autism, applies to persons having disorders initially manifesting during the developmental period, defined as before age 22. *See* 20 C.F.R. Pt. 404, subpt. P, app. 1, § 112.02. There is no evidence that Plaintiff's cognitive deficits appeared at such an early age.

proceeding. *See* 42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 100; *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993).

26. A sentence six remand is proper when a reviewing court concludes that the Commissioner's decision might reasonably have been different had that new evidence been before him when his decision was rendered. *Hargis v. Sullivan*, 945 F. 2d 1482, 1493 (10th Cir.1991). A remand under sentence six is non-appealable and the district court retains jurisdiction over the action during the pendency of the additional administrative proceedings. *See Nguyen v. Shalala*, 43 F.3d at 1403. Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the Commissioner's decision, but only if the claimant shows good cause for failing to present the evidence earlier. See *Melkonyan*, 501 U.S. at 99-100.

27. Defendant concedes that Dr. Barrientos' report constitutes new evidence within the meaning of § 405(g). (Def.'s Resp. Pl's Mot. Rev. Rem. at 7.) The report is clearly material as the record contains no similar evidence and it relates to the time period in question. However, Plaintiff has offered nothing that could qualify as good cause for his failure to timely submit the report to the Appeals Council. Because Plaintiff has failed to establish good cause for failing to present Dr. Barrientos' report to the Appeals Council, a sentence six remand would be inappropriate. The question then becomes whether the case should be remanded under sentence four.

28. While the record before the ALJ contained no direct evidence of a mental impairment, it does establish that Plaintiff sustained a head injury in a serious automobile accident and thereafter suffered from memory lapses, daily headaches, dizziness, double vision, and difficulty in understanding and following instructions. (R. at 90; 92-97; 99-100;106; 110-118; 119; 124; 126;

133-134; 157.) The evidence is sufficient to establish a severe mental impairment at step two. Step two requires only a *de minimis* showing by the claimant that he has an "impairment or combination of impairments which significantly limits his ability to do basic work activities. 20 C. F. R. § 404.1520( c); *see Hawkins v. Chater*, 113 F. 3d 1162, 1169 (10th Cir. 1997). Plaintiff's mental impairment meets a step two threshold and could significantly limit his ability to work. While the record in the case established that the Plaintiff suffered from a neurological or psychological problem, the ALJ failed to develop the record with respect to this impairment. Because a Social Security disability hearing is a non-adversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F. 3d 359, 360-61 (10th Cir.1993). The ALJ failed to satisfy his duty to develop the record and should have ordered a consultative examination to assess the status of Plaintiff's mental condition and its effect on his ability to perform substantial gainful activity.

29. The ALJ has broad latitude in determining whether to order a consultative examination. *See Diaz v. Secretary of Health & Human Servs.*, 898 F. 2d 774, 778 (10th Cir. 1990). In deciding whether the ALJ erred in not ordering a consultation, the Court must consider whether there is sufficient medical evidence in the record so that the ALJ can make an informed decision without a consultative examination. *Matthews v. Bowen*, 879 F. 2d 422, 424 (8th Cir. 1989). In this situation there is scant evidence concerning the effect of the Plaintiff's mental condition on his ability to work. The ALJ could not have made an informed decision without a psychological consultation. A remand is thus required for the ALJ to obtain a psychological consultative examination.

30. Plaintiff argues that the ALJ erred by failing to include in the hypothetical question to

the vocational expert evidence of the Plaintiff's mental limitations. A vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record. *Gay v. Sullivan*, 986 F. 2d 1336, 1341 (10th Cir. 1993); *Hargis v. Sullivan*, 945 F. 2d 1482, 1492 (10th Cir. 1991). In this instance, the ALJ did not include in the hypothetical question any reference to the Plaintiff's limitations with respect to his ability to lift or carry items at shoulder level as documented in Dr. Herrera's physical consultative examination, (R. at 156), and Dr. Nickerson's determination. (R. at 63.) The ALJ also failed to mention any mental impairment. Perhaps the ALJ did not include the mental impairment in the hypothetical because of his belief that the record did not reflect any such impairments. However, as noted *supra*, the record established that Plaintiff suffered from a severe mental impairment. The ALJ also failed to include Plaintiff's limited ability to communicate in English.[4] On remand, if the case progresses beyond step three, the ALJ should obtain additional vocational expert testimony and should include these limitations in his hypothetical to the vocational expert.

      31.      Plaintiff contends that the ALJ improperly discounted his complaints of disabling pain. The ALJ found that Plaintiff's testimony of subjective complaints was not credible. (R. at 13.) While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *Thompson v. Sullivan*, 987 F. 2d 1482, 1490 (10th Cir. 1993). In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence

---

[4] If upon remand, the ALJ's analysis reaches step five, I suggest a finding concerning Plaintiff's limited ability to communicate in English on his ability to work. El analfabetismo en el idioma predominante puede afectar de forma sustancial la capacidad de encontrar trabajo en la economía nacional. *See* Medical-Vocational Guidelines, 20 C.F.R. § 404 Subpt. P, App. 2; Rule 202.16; Social Security Acquiescence Ruling 86-3(5).

of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala*, 43 F. 3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F. 2d 161, 163 (10th Cir. 1987)).

32. The ALJ's credibility finding was crucial in this case because it directly influenced the ALJ findings that Plaintiff retained the residual functional capacity for light work and affected the hypothetical questions posed to the vocational expert. The ALJ failed to follow the *Luna* pain analysis and failed to link his credibility findings to substantial evidence of record. (R. at 13-14.) Thus, the ALJ's credibility determination is not supported by substantial evidence. *Kepler v. Chater*, 68 F. 3d 387, 391-92 (10th Cir. 1995). On remand, the ALJ should expressly follow the *Luna* pain analysis, reevaluate Plaintiff's credibility, and expressly link his credibility findings to the record.

## RECOMMENDED DISPOSITION

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 14) be granted and that this matter be remanded to the Commissioner pursuant to sentence four. On remand, the Commissioner should obtain a psychological consultative examination and consider whether Plaintiff satisfies the requirements of a listed impairment. If the case progresses beyond step three, the ALJ should obtain additional vocational expert testimony based on hypothetical questions that include all of Plaintiff's impairments, expressly follow the *Luna* pain analysis, reevaluate Plaintiff's credibility, and expressly link his credibility findings to the evidence of record.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings

and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

 

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**